## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

|  |  |  |
|---|---|---|
| **BRUCE GRANGER,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **NO.  4:21-11066-TSH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GARY E. NESBITT and POLARIS** | ) | |
| **TRANSPORT CARRIERS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

### ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 9)

#### October 7, 2021

**HILLMAN, D.J.**

Bruce Granger commenced this action against Gary Nesbitt and Polaris Transport Carriers, Inc. ("Polaris") in Massachusetts state court on December 28, 2020.  (Docket No. 9-3 at 3).  The defendants removed the case to federal court on June 28, 2021.  (Docket No. 1).  The defendants now move to dismiss, arguing that service was untimely and defective.  (Docket No. 9).  Although the Court agrees, the Court finds that the delay was due to good cause, and that, given another opportunity, it is reasonably likely that Granger will be able to serve the defendants properly.  Instead of dismissing the action, the Court exercises its discretion to quash service and allow Granger ninety days to effectuate service.  The Court ***denies*** the defendants' motion.

#### Background

Granger alleges that on January 17, 2018, he was driving eastbound on Route 90 in Massachusetts when Nesbitt, also driving eastbound on Route 90, failed to yield and crashed his

vehicle into Granger's. (Complaint at ¶¶ 3, 6). Granger alleges that, at the time of the collision, Nesbitt was an agent or employee of Polaris acting within the scope of his employment. (*Id.* at ¶ 22). Granger sued the defendants in Massachusetts state court on December 28, 2020, alleging two counts of negligence against Nesbitt and one count of "negligence of employee" against Polaris. (*Id.* at ¶¶ 7, 14, 23).

Granger, who resides in Massachusetts, served Nesbit, who resides in Canada, and Polaris, which is incorporated and has its principal place of business in Canada, through a process server in Canada. (*Id.* at ¶¶ 1-2, 16). The process server averred that he served Polaris on May 10, 2021 by leaving a copy of the summons and complaint with "Mary Ann Fernandez, Receptionist and person in care & control due to Covid 19" at Polaris. (Docket No. 18-4 at 3). The process server averred that he served Nesbitt on May 27, 2021 by leaving a copy of the summons and complaint with "Kevin Wortman, Safety & Compliance Manager" at Polaris. (*Id.* at 1). The process server's affidavits were filed in the state court on June 11, 2021. (Docket No. 9-3 at 3). The defendants removed the case to federal court on June 28, 2021. (Docket. No. 1). This Court has diversity jurisdiction over the plaintiff's claims. *See* 18 U.S.C. § 1332(a)(2).

## Discussion

### 1. Timeliness of Service

The defendants argue that service was defective because it was untimely under Rule 4(j) of the Massachusetts Rules of Civil Procedure. (Docket No. 11 at 2-4). State procedural law determines whether service was timely because "state law governs the service of process prior to removal to the district court." *Osborne v. Sandoz Nutrition Corp.*, 67 F.3d 289, 1995 WL 597215, at *1 (1st Cir. Oct. 6, 1995) (unpublished); *see also Garden Homes, Inc. v. Mason*, 238 F.2d 651,

653 (1st Cir. 1956); Fed. R. Civ. P. 81(c) (federal rules of civil procedure apply *after* an action is removed).  Rule 4(j) provides:

> If a service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Mass. R. Civ. P. 4(j).  Because, here, service was made more than ninety days after the complaint was filed, Granger must show "good cause" for the late service to avoid dismissal.

The good cause standard in Mass. R. Civ. P. 4(j) is a "stringent one, requiring a showing that counsel made diligent efforts within the allotted time period for effecting service." *Nett v. Bellucci*, 774 N.E.2d 130, 137 n.8 (Mass. 2002).  "The focus of the court's inquiry is the reasonableness and diligence of counsel's effort to effect service within the time required." *Shuman v. Stanley Works*, 571 N.E.2d 633, 635 (Mass. App. Ct. 1991).  The length of the delay is not dispositive; its weight depends on its reasonableness in context of the overall circumstances. *Comm'r of Revenue v. Carrigan*, 698 N.E.2d 23, 26 n.4 (Mass. App. Ct. 1998).  "When the [rule 4(j)] period reaches its expiration and adequate proof of service of process has not been received, the plaintiff must take additional steps to ensure timely service of process, or, in the alternative, move under [rule] 6(b) for an enlargement of the time to effect service of process."  *Id.* at 27 (quoting *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84 (3d Cir. 1987)).  Failure to seek an extension of time for service under Mass. R. Civ. P. 6(b), which allows for "liberal extension[s]," *Carrigan*, 698 N.E.2d at 26, is "some evidence of lack of diligence," *Shuman*, 571 N.E.2d at 635. Potential prejudice to the plaintiff resulting from a dismissal does not provide a basis for finding good cause.  *See Hull v. Attleboro Sav. Bank*, 596 N.E.2d 358, 363 (Mass. App. Ct. 1992).

Granger's counsel averred to the following. The case was assigned to counsel in January 2021. (Docket No. 18-1 at ¶ 1). On January 28, 2021, counsel first attempted to serve the defendants by "Return Receipt Requested" mail. (*Id.* at ¶ 3). On February 12, 2021, having not received a return receipt, counsel (following the Hague Convention Service Guidelines) filled out USM-94 Forms for both defendants and sent them, along with the summons, complaint, and civil action cover sheet, to the Ministry of the Attorney General in Ontario, Canada for service. (*Id.* at ¶ 5). Counsel then placed several calls to the Ministry to inquire about service. (*Id.* at ¶ 6). In late March, counsel spoke to someone at the Ministry who informed him that the Ministry was maintaining a small staff and that there would be significant delays in processing requests for service. (*Id.*). At this time, counsel also learned that it usually takes three to four months for the Ministry to fulfil service requests. (*Id.*). The Rule 4(j) ninety-day deadline was looming.

Sometime after speaking with the Ministry, counsel spoke to the clerk at the state court in which the complaint was filed; the clerk informed counsel that the court was not defaulting parties or dismissing actions because of delays in service due to the COVID-19 pandemic. (*Id.* at ¶ 8). The clerk also recommended that counsel hire a process server company to serve the defendants. (*Id.*). The first service company counsel contacted quoted the service at $4,000, which counsel believed was too high. (*Id.* at ¶ 9). Counsel eventually found another service company, which charged $533. (*Id.* at ¶ 10). The company suggested that counsel file a request with the court under Mass. R. Civ. P. 4(c) for the appointment of a special process server. (*Id.* at 11). The state court docket reflects that counsel did so on May 4, 2021. (Docket No. 9-3). The defendants were then served (invalidly, see *infra*) later that month, approximately 130-150 days after the complaint was filed.

The Court finds that counsel acted diligently under the circumstances. After counsel took over the case in January, he acted promptly by attempting to serve the defendants via mail at the end of January and, when that did not work, through the Canadian Ministry in mid-February. Counsel then reached out to the Canadian Ministry several times and, upon learning that service would be delayed, contacted the state court in which the suit was filed, and hired a process server to effect service. To be sure, counsel could have acted more quickly, and he should have sought an extension under Mass. R. Civ. P. 6(b), *see Shuman*, 571 N.E.2d at 635, but counsel's efforts to contact the state court around the ninety-day deadline, at which point he was assured that the court was not dismissing actions due to service delays at that time, reflects diligence.

Furthermore, two unique circumstances weigh in favor of finding good cause -- the COVID-19 pandemic, and the need for international service in this case. Both circumstances compounded to make service more difficult. Given prevalent staffing shortages, (Docket No. 18-1 at ¶¶ 6-7), and delays caused by the pandemic writ large, service of process two months past the three-month deadline was not unreasonable. *See Carrigan*, 698 N.E.2d at 26 n.4.

Service of process to foreign defendants in Canada, moreover, must comply with the Hague Convention, a multilateral treaty intended "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions . . . receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id.* Because delays in effectuating international service "often occur," *see* Advisory Committee Notes on the 2016 Amendment to Fed. R. Civ. P. 4, however, the federal rules exempt international service from the ninety-day deadline, *see* Fed. R. Civ. P. 4(m). While the Massachusetts rules do

not contain a similar exemption, the Court finds the necessity of international service to be a relevant circumstance providing context to the reasonableness and diligence of counsel's efforts. Here, counsel timely attempted to serve the defendants through Canada's central authority, the method of international service specifically created and condoned by the Hague Convention. *See Schlunk*, 486 U.S. at 698. When counsel learned that timely service through the central authority was not possible, counsel reached out to the state court and hired a process server company to serve the defendants instead. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (plaintiffs may serve defendants internationally through means other than the state's central authority if the state does not object to the alternative means).

In sum, the Court finds that Granger has demonstrated good cause for the delay. In view of the pandemic and need for international service in this case, counsel made reasonable and diligent efforts to serve the defendants timely. Accordingly, dismissal of the plaintiff's complaint pursuant to Mass. R. Civ. P. 4(j) is not required.

### 2. *Propriety of Service*

The defendants argue that service, even if timely, was improper. (Docket No. 11 at 5-8). Granger has "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). "Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies." *Brockmeyer*, 383 F.3d at 801. The United States and Canada are both signatories to the Convention, *see Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002), and pursuant to the Supremacy Clause of the United States Constitution, the Convention applies to service of process under Mass. R. Civ. P. 4, *see Golub v. Isuzu Motors*, 924 F. Supp. 324, 326 (D. Mass. 1996).

The Hague Convention permits service of process through the destination state's central authority or through other means not objected to by the state. *See Brockmeyer*, 383 F.3d at 801. Some states have expressly objected to certain methods of service. *See Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co., Ltd.*, 494 F. Supp. 3d 404, 414 (N.D. Tex. 2020). Where a state has not made an express objection, however, courts look to "the internal service rules of the destination State to determine whether that State would object to the particular method of service" proposed or used. *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D.N.J. 2002) (looking to procedural rules in Ontario, Canada to determine whether service was valid); *see also AngioDynamics, Inc. v. Clarion Med. Techs.*, 2019 WL 10787926, at *11 (D. Mass. Sept. 25, 2019) (same); *Jerge v. Potter*, 2000 WL 1160459, at *1 (W.D.N.Y. Aug. 11, 2000) (same).

"The federal system of Canada requires examining the law of the Province of Ontario," *Jerge*, 2000 WL 1160459, at *1, where both defendants are alleged to reside, (Complaint at ¶¶ 2, 16). Rule 16 of the Ontario Rules of Civil Procedure governs service of process.[1] As to service of individuals, Rule 16.02(1)(a) requires "leaving a copy of the [summons and complaint] with the individual." As an alternative, Rule 16.03 permits acceptance of service by the defendant's lawyer; service by mail to the defendant's last known address (only effective when received); or leaving the documents at the defendant's residence with anyone who appears to be an adult member of the same household, and within the next day also mailing a copy to the person at the place of residence. As to service to corporations, Rule 16.02(1)(c) requires "leaving a copy of the document with an

---

[1] *See* Ontario Rules of Civil Procedure, available at https://www.ontario.ca/laws/regulation/900194.

officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business."

Here, Granger served Nesbitt by leaving the summons and complaint with Kevin Wartman, a Polaris "Safety & Compliance Manger," at Polaris' business address.  (Docket No. 18-4 at 1). The process server averred that Wartman had advised his office that due to Nesbitt "driving in the United States most of the time [Wartman] would accept service and that Polaris Transportation Carriers Inc., would be defending the action for both defendants."  (*Id.*).  From an email attached to Granger's opposition to the defendants' motion to dismiss, it appears that a representative from the process server company told Granger's counsel that the company's agents had made three attempts to serve Nesbitt at Nesbitt's residence.  (Docket No. 18-5).  The representative also stated that he had spoken to Nesbitt's wife, who advised him that Nesbitt is rarely home because of his schedule as a long-distance truck driver and that he would be difficult to serve personally; she also told the representative that she would give Nesbitt his number.  (*Id.*).  The representative ultimately received a call from Nesbitt, who also explained his unpredictable driving schedule.  (*Id.*).  Nesbitt also "made clear" that he was not evading service and was aware of the accident and Polaris being served.  (*Id.*).  Nesbitt further stated that he gave his permission for the company to serve Wartman at Polaris, and that he would call Wartman to give him a heads up.  (*Id.*).

Leaving documents with a designated individual does not appear to be permitted to effect service on an individual under the Ontario Rules.  This indicates that Canada would object to the particular method of service utilized by Granger.  *See Dimensional Commc'ns*, 218 F.Supp.2d at 656.  Accordingly, the Court concludes that Granger's service of Nesbitt was invalid.

Granger served Polaris by leaving a copy of the summons and complaint with "Mary Ann Fernandez, Receptionist and person in care & control due to Covid 19" at Polaris' business address.

(Docket No. 18-4 at 3).  The Ontario Rules permit service on a corporation to "a person at any place of business of the corporation who appears to be in control or management of the place of business."  *See* Rule 16.02(1)(c).  Although the defendants make much of the fact that Fernandez was only a receptionist, she very well may have appeared to be in control of the place of business due to the pandemic.  Indeed, the process server's affidavit states that she was in "care & control."  See *AngioDynamics, Inc.*, 2019 WL 10787926, at \*12.  That said, the process server also knew that she was a receptionist.  Moreover, in an affidavit attached to the defendants' motion to dismiss, Wartman avers that he is the Director of Risk Management at Polaris, was present on May 10, 2021 (when Polaris allegedly was served), and that Fernandez is neither a person in control or management of Polaris nor a person authorized or designated to accept service of legal papers.  (Docket No. 9-6).  This is a closer call, but based on the Ontario Rules, the Court concludes that service was invalid here too.

Despite the ineffective service, the Court has the discretion to quash service instead of dismissing the action.  *See S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 651 (5th Cir. 1988).  Dismissal is "inappropriate when there exists a reasonable prospect that service may yet be obtained."  *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992); *see also Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983); *Cutler Assocs., Inc. v. Palace Constr., LLC*, 132 F. Supp. 3d 191, 194 (D. Mass. 2015); *Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012); *Bailey v. Boilermakers Local 667 of Intern. Broth. of Boilermakers*, 480 F. Supp. 274, 278 (N.D.W.V. 1979).  Although the Canadian process server Granger hired improperly served the defendants, it is reasonably likely that Granger, if given another opportunity, can effectively serve the defendants, either through Canada's central authority, in accordance with the Ontario Rules,

or through recognized means otherwise approved by Canada.  Accordingly, rather than dismiss the complaint, the Court will quash service and permit Granger ninety additional days to serve the defendants.

## Conclusion

For the reasons stated, the motion is ***denied***, Granger's ineffective service of process is quashed, and Granger has ninety days from the issuance of this opinion to effectuate service.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**